IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DT CONSULTANTS, LLC, | : |
| Plaintiff, | : |
| v. | :     Civil Action No. GLR-17-1697 |
| HOWMEDICA OSTEONICS CORP., et al., | : |
| Defendants. | : |

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Plaintiff DT Consultants, LLC's ("DT") Motion for Partial Summary Judgment on Liability (ECF No. 4) and Defendants Howmedica Osteonics Corp. ("Howmedica") and Stryker Corporation's ("Stryker") Cross-Motion for Summary Judgment (ECF No. 18).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2016). For the reasons outlined below, the Court will grant in part and deny in part DT's Motion and Defendants' Cross-Motion.

---

[1] Also pending are Defendants' Motion to Dismiss (ECF No. 17) and Motion to Defer Consideration of Cross-Motions for Summary Judgment (ECF No. 19). Because the Court will grant DT's Motion for Partial Summary Judgment, the Court will deny these Motions as moot.

In addition, pending before the Court is DT's Motion for Leave to File Surreply (ECF No. 36). "Unless otherwise ordered by the court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2016). Surreplies may be permitted, however, "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md 2003) (citing Lewis v. Rumsfeld, 154 F.Supp.2d 56, 61 (D.D.C. 2001)). Here, Defendants do not present any new matters in their Replies. Rather, they address arguments raised in DT's Oppositions. Accordingly, the Court will deny DT's Motion.

## I. BACKGROUND[2]

DT is a consulting and information services company that licenses and sublicenses orthopedic databases and other medical intellectual properties to medical device companies and healthcare providers. (Compl. ¶ 2, ECF No. 1). In September 2011, DT entered into a Database License Agreement with Duke University. (Id. ¶ 7). The agreement permitted DT to sublicense an orthopaedic database and its underlying data (the "Database") that Duke and Dr. James Nunley, II, the Chief of Duke's Department of Orthopaedic Surgery developed. (Id. ¶¶ 7, 11; Pl.'s Mot. Partial Summ. J. ["Pl.'s Mot."] Ex. 1 ["Sublicense"] at App. A, ECF No. 4-1).

In October 2012, DT entered into a Database Sublicense Agreement (the "Sublicense" or "Agreement") with Howmedica's predecessor-in-interest, Small Bone Innovations, Inc. ("SBI"). (Mitchell Decl. ¶ 4, ECF No. 18-3; Compl. ¶ 8). The Sublicense granted SBI permission to use the Database. (Compl. ¶ 9). The Sublicense provides that its term "shall be in perpetuity." (Sublicense § 6.1). In exchange for the Sublicense, SBI agreed to pay DT a $300,000.00 upfront cash royalty. (Id. § 4.1). SBI also agreed to pay a $36,000.00 annual "Update Royalty" "so long as" SBI: (1) "shall receive in any calendar year during the term of th[e] [Sublicense] the written commitment

---

[2] Unless otherwise noted, the facts outlined here are set forth in DT's Complaint (ECF No. 1). To the extent the Court discusses facts that DT does not allege in its Complaint, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

or agreement" from Dr. Nunley or a "qualified colleague" to Update[3] the Database during that calendar year; and (2) "shall receive during that calendar year an Update of the Database" from Dr. Nunley or a "qualified colleague." (Id.; Mitchell Decl. ¶ 16). The terms of the Sublicense dictate that SBI would pay the $36,000.00 Update Royalty in four quarterly $9,000.00 installments (the "Quarterly Payments") from April 1, 2013 to January 1, 2017. (Sublicense § 4.1). Starting on January 1, 2017, and for all subsequent years, SBI and DT agreed that the Quarterly Payment amount would increase by five percent compounded annually. (Id.).

In August 2014, Defendants purchased certain assets from SBI. (Mitchell Decl. ¶ 5). As part of the asset purchase, Defendants entered into Bill of Sale and Assignment and Assumption Agreement (the "Assignment Agreement") with SBI, under which Howmedica assumed SBI's rights and obligations under the Sublicense. (Defs.' Opp'n Pl.'s Mot. Partial Summ. J. & Cross-Mot. Summ. J. ["Defs.' Opp'n & Cross-Mot."] Ex. B ["Assignment Agreement"], ECF No. 18-3; Mitchell Decl. ¶ 5). Defendants then paid the required Quarterly Payments on July 22, August 18, and November 16, 2015, and February 23, July 11, and October 17, 2016. (Pl.'s Reply Ex. B at 2–9 ["Reicher Decl."] ¶ 25, ECF No. 28-2).[4]

---

[3] "Update" is capitalized and defined in the Sublicense. The Court uses the term as defined in the Sublicense, which provides that an "Update" is an "extension . . . of the histories of earlier selected patients" or "a new statistical extraction . . . from the most recent provider database that shall comprise all or part of the Database." (Sublicense § 1.3).

[4] Citations to Exhibit B of DT's Reply refer to the pagination assigned by the Court's electronic docketing system.

On December 28, 2016, DT received a termination notice from Defendants. (Pl.'s Mot. Ex. 2 ["Termination Letter"], ECF No. 4-2). In the letter, titled "Termination of Duke Database Sublicense Agreement," Howmedica[5] states that it "hereby provides notice that it is terminating the Agreement" as of the date of the letter. (Id.). On January 6, 2017, DT sent Defendants a response indicating that their attempt to terminate the Sublicense was "wrongful," "in breach of the Agreement," and "of no force and effect." (Jan. 6, 2017 Letter at 2, ECF No. 4-3). DT also demanded that Howmedica "comply with the terms and conditions of the Agreement for its stated term and promptly retract its stated 'Termination' of the Agreement." (Id.). On February 8, 2017, Defendants responded, asserting that under Maryland law "contract[s] with a perpetual term do not last forever; rather such a contract is interpreted as contemplating performance for a reasonable time" and "are terminable at will by either party." (Feb. 8, 2017 Letter at 1, ECF No. 4-4).

Also on January 6, 2017, Dr. Nunley sent Defendants a letter to "serve as the written commitment" to update the Database in 2017. (Pl.'s Reply Ex. B at 75–76 ["Nunley Letter"] at 1, ECF No. 28-2; Pl.'s Reply Ex. B at 11–15 ["Nunley Decl."] ¶¶ 24–25, ECF No. 28-2). Despite sending DT a termination notice in December 2016, Howmedica remitted the first 2017 Quarterly Payment on January 19, 2017. (Reicher Decl. ¶ 34 n.1). Howmedica did not, however, make the second Quarterly

---

[5] The Court notes that the letter is on Stryker Orthopaedics letterhead. Stryker Orthopaedics is Howmedica's doing business as name. The Court uses the Howmedica name to avoid confusion.

Payment in April 2017. (See id. ¶ 34). Nevertheless, on July 5, 2017, DT sent Howmedica the 2017 Second Quarter Database Update. (Pl.'s Reply Ex. B at 78 ["2017 Update"]; Nunley Decl. ¶ 26). On July 12, 2017, Howmedica rejected DT's attempt to deliver the Database Update. (Albu Decl. Ex. A, ECF No. 35-1).

Meanwhile, on June 20, 2017, Howmedica provided DT with written correspondence stating that it "terminated the Sublicense on December 28, 2016" and that it "no longer desires to receive any annual written commitment or agreement to update the database under the Sublicense." (Defs.' Opp'n & Cross-Mot. Ex. 1 at 72–73 ["June 20, 2017 Letter"], ECF No. 18-3).

On June 21, 2017, DT sued Howmedica and Stryker. (ECF No. 1). In its two-count Complaint, DT alleges: Breach of Contract (Breach of the Agreement) (Count I); and Breach of Contract (Contractual Indemnification) (Count II). (Compl. ¶¶ 26–36). DT seeks money damages and attorney's fees and costs. (Id. ¶¶ A–C).

The same day DT filed suit, it filed a Motion for Partial Summary Judgment on Liability. (ECF No. 4). Defendants filed their Opposition and Cross-Motion for Summary Judgment on August 14, 2017. (ECF No. 18). DT filed its combined Reply in support of its Motion and Opposition to Defendants' Cross-Motion on September 19, 2017. (ECF No. 28). On October 10, 2017, Defendants filed a Reply in support of their Cross-Motion. (ECF No. 35).

## II. DISCUSSION

### A. Standards of Review

#### 1. Rule 56

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere

speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

### 2. Cross-Motion for Summary Judgment

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits to 'determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st

Cir. 1997)). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." Id. (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)). This Court, however, must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmovant is merely colorable, or is not significantly probative, summary judgment must be granted. Anderson, 477 U.S. at 249–50.

**B.     Analysis**

    **1.     Breach of Contract**

Under Maryland law,[6] to establish a breach of contract claim, the plaintiff must allege: (1) "that the defendant owed the plaintiff a contractual obligation"; and (2) "that the defendant breached that obligation." Palermino v. Ocwen Loan Servicing, LLC, No. TDC-14-0522, 2015 WL 6531003, at *4 (D.Md. Oct. 26, 2015) (quoting Taylor v. NationsBank, N.A., 776 A.2d 645, 651 (Md. 2001)).

"The fundamental rule in the construction and interpretation of contracts is that the intention of the parties as expressed in the language of the contract controls the analysis." Ford v. Antwerpen Motorcars Ltd., 117 A.3d 21, 25 (Md. 2015) (quoting Curtis G. Testerman Co. v. Buck, 667 A.2d 649, 654 (Md. 1995)). Maryland follows the law of objective interpretation of contracts, which gives plain meaning to the

---

[6] The parties agree that Maryland law governs this case.

unambiguous language of the agreement. DIRECTV, Inc. v. Mattingly, 829 A.2d 626, 632 (Md. 2003). This type of interpretation considers "what a reasonably prudent person in the same position would have understood as to the meaning of the [a]greement." Cochran v. Norkunas, 919 A.2d 700, 710 (Md. 2007) (citing Walton v. Mariner Health, 894 A.2d 584, 594 (Md. 2006)).

Typically, a court focuses on "the four corners of the agreement," and "the court should give effect to every clause so as not to disregard a meaningful part of the express language of the written contract." Allegis Grp., Inc. v. Jordan, No. GLR-12-2535, 2016 WL 1077098, at *4 (D.Md. Mar. 18, 2016) (quoting Clancy v. King, 954 A.2d 1092, 1101 (Md. 2008)), vacated in part on reconsideration on other grounds, No. GLR-12-2535, 2017 WL 877271 (D.Md. Mar. 6, 2017). As a result, the Court "giv[es] effect to the clear terms of the contract regardless of what the parties to the contract may have believed those terms to mean." Clancy, 954 A.2d at 1101 (quoting United Servs. Auto. Ass'n v. Riley, 899 A.2d 819, 833 (Md. 2006)).

DT contends that Defendants materially breached the Sublicense when they unilaterally terminated it in December 2016 and when they failed to timely remit the April 2017 Quarterly Payment. Defendants counter with two principal arguments. First, Defendants maintains that the Sublicense is terminable at will, and therefore Howmedica did not breach the Sublicense when it terminated the Agreement. Second, Defendants assert that after 2016, Howmedica's obligation to make Quarterly Payments is conditional. As a result, because Howmedica rejected the 2017 Update, it had no

9

obligation to make Quarterly Payments in 2017. Defendants also maintain that Stryker is not a party to the Sublicense, and therefore cannot be held liable for a breach of the Sublicense as a matter of law.[7] The Court first addresses whether Stryker may be held liable, and then addresses the purported breaches in turn.

### a. Parties to the Sublicense

Defendants assert that Stryker is entitled to summary judgment in its favor because it is not a party to the Sublicense. The Court agrees.

To support their argument, Defendants point to certain provisions of the Assignment Agreement. Under "Recitals," "Stryker Corporation" is listed as the "Parent" of "Buyer," Howmedica. (Defs.' Opp'n & Cross-Mot. Ex. B at 52 ["Assignment Agreement"], ECF No. 18-3).[8] The Assignment Agreement states that SBI "sells, transfers, conveys, assigns and delivers to <u>Buyer</u>" its interest in the purchased assets and that "<u>Buyer</u> . . . purchases and accepts the Transferred Assets," including the Sublicense. (Id. ¶ 2; id. Ex. A) (emphasis added). The Assignment Agreement further

---

[7] Defendants also take issue with the "indiscriminate, one sentence affidavit" DT filed with its Motion that "is not mentioned or referred to in the Motion." (Mem. Supp. Defs.' Opp'n & Cross-Mot. at 4, ECF No. 18-2). Defendants also point out that "no documents are attached to the [A]ffidavit." (Id.). The signed and dated Affidavit, from DT CEO David L. Reicher, declares "under the penalty of perjury" that the allegations in DT's Motion are "true and correct" and "based on personal knowledge." (Reicher Aff., ECF No. 4-5). Although Reicher's Affidavit does not conform to those typically submitted in support of a motion for summary judgment, the Court concludes that it is akin to a verified complaint, which "is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge." Walker v. Tyler Cty. Comm'n, 11 F.App'x 270, 274 (4th Cir. 2001) (quoting Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991)).

[8] Citations to the Assignment Agreement refer to the pagination assigned by the Court's electronic docketing system.

states that SBI "assigns to Buyer the [ ] Assumed Liabilities arising out of the ownership of the Transferred Assets . . . , and Buyer hereby assumes and agrees to pay and discharge when due such Transferred Liabilities." (Id. ¶ 3) (emphasis added). By its plain language, then, the "Buyer"—Howmedica—is the only party that assumed SBI's liabilities under the Sublicense. See Cochran, 919 A.2d at 709 (citation omitted).

Thus, the Court concludes that Stryker is not a party to the Sublicense and, as a result, cannot be held liable for any breach of the Sublicense. Accordingly, the Court will grant summary judgment in Defendants' favor as to Stryker's liability under Counts I and II. The Court now turns to Howmedica's alleged breaches of the Sublicense.

### b. Termination of the Sublicense

#### i. The Sublicense's Term

Under Maryland law, "a contract may not exist in perpetuity in the absence of an express provision." Boland v. Boland, 31 A.3d 529, 573 (Md. 2011); see also Kiley v. First Nat'l Bank of Md., 649 A.2d 1145, 1153 (Md.Ct.Spec.App. 1994). If a contract is silent as to duration, the Court will imply a "reasonable duration." Boland, 31 A.3d at 573 (quoting Lerner v. Lerner Corp., 750 A.2d 709, 716 (Md.Ct.Spec.App. 2000)). Contracts that are silent as to duration are usually terminable at will by either party. Kiley, 649 A.2d at 1153 (citing Richard A. Lord, 1 Williston on Contracts § 4:19 (4th ed. 1990); then citing Restatement (Second) of Contracts § 33 (Am. Law Inst. 1981)).

The parties vigorously dispute whether the Sublicense is perpetual. DT contends that the Sublicense's express term of "in perpetuity" means that the contract is perpetual

and not terminable at will. Defendants argue that whether a contract is "perpetual" turns on whether the contract calls for perpetual performance, and that DT conflates a perpetual term with perpetual performance. Because the Sublicense does not provide for Howmedica's perpetual performance, Defendants aver, it is terminable at will. The Court disagrees with Defendants for at least three reasons.

First, the Sublicense expressly states that its term "shall be in perpetuity." (Sublicense § 6.1). The Sublicense, therefore, contains an express provision which states that it exists in perpetuity. See Boland, 31 A.3d at 573. Further, § 4.1 of the Sublicense, by its express language, incorporates the term of the Sublicense, foreclosing any argument that the term of the Sublicense is perpetual while performance is not. It states: "so long as [Howmedica] shall receive in any calendar year during <u>the term of this [Sublicense]</u>" a written assurance from Dr. Nunley and an Update, Howmedica is obligated to make the Quarterly Payments. (Sublicense § 4.1) (emphasis added).

Second, the performance obligations set forth in § 4.1 contemplate perpetual performance. As discussed above, § 4.1 requires Howmedica to make Quarterly Payments if DT provides a written assurance from Dr. Nunley that DT will provide an Update in a calendar year and DT provides that Update. During the first four years of the Sublicense term, the Quarterly Payment amount was $9,000.00. (Id.). The Sublicense further provides that starting on January 1, 2017, and for all subsequent years, the Quarterly Payment amount would increase by five percent compounded annually. (Id.). The parties to the Sublicense, therefore, not only intended for the Sublicense's

performance obligations to continue past 2016, but intended them to continue every year thereafter as long as DT satisfied its obligations. Accord Boland, 31 A.3d at 573 (explaining that a "contract's duration may be defined by contingent future events").

Third, the Sublicense contains express terms governing the conditions under which it may be terminated. Section 6.1.1 of the Sublicense provides, in relevant part, that either party has "the right to terminate [the Sublicense] if the other party has materially breached [the Sublicense] and such breach remains uncured for a period of thirty (30) days after the party has received written notice thereof." (Sublicense § 6.1.1). And under § 6.1.2 of the Sublicense, the Agreement immediately terminates if a judicial proceeding indicating that Howmedica is having financial difficulties begins and is not dismissed or bonded within 180 days. (Sublicense § 6.1.2). These provisions show that the parties did not intend for the Sublicense to be terminable at will. See Boland, 31 A.3d at 573; Kiley, 649 A.2d at 1153.

Thus, the Court concludes that the Sublicense's term is perpetual, and it is not terminable at will.

### ii. Howmedica's December 28, 2016 Letter

DT maintains that Howmedica materially breached the Sublicense when it unilaterally terminated the Agreement in its December 28, 2016 letter to DT. The Court agrees.

Here, the December 28, 2016 letter states that Howmedica "provides notice that it is terminating the Agreement as of the date hereof." (Termination Letter). It also states

that "all rights and sublicenses" granted by DT are "terminated." (Id.). As discussed above, § 6.1.1 expressly provides the circumstances under which either party may terminate the Sublicense. Section 6.1.1 requires that a party materially breach the Sublicense, and that the breach remain uncured for thirty days after the party has received written notice of the breach. (Sublicense § 6.1.1.). Howmedica does not put forth any evidence of circumstances that would justify termination of the Sublicense. And the December 28, 2016 letter unequivocally states that it is "provid[ing] notice that it is terminating the Agreement" as of the date of the letter. (Termination Letter). Thus, the Court concludes that Howmedica materially breached the Sublicense when it terminated the Agreement in its December 28, 2016 letter.

### c. Quarterly Payments

#### i. Obligation to Make Quarterly Payments

Defendants contend that the Sublicense does not impose a perpetual obligation on Defendants to pay Update Royalties to DT. Rather, the obligation is expressly conditioned upon their acceptance of Updates. Because Howmedica expressly rejected all future Updates after 2016, Defendants assert, Howmedica is not obligated to make any further Quarterly Payments. The Court disagrees.

A condition precedent is "a fact, other than mere lapse of time, which, unless excused, must exist or occur before a duty of immediate performance of a promise arises." All State Home Mortg., Inc. v. Daniel, 977 A.2d 438, 447 (Md.Ct.Spec.App. 2009) (quoting Chirichella v. Erwin, 310 A.2d 555, 557 (Md. 1973) (citation omitted)).

14

If a contractual obligation is subject to a condition precedent, no duty of performance arises and there can be no breach for nonperformance "until the condition precedent is either performed or excused." Id. (quoting Pradhan v. Maisel, 338 A.2d 905 (Md.Ct.Spec.App.), cert. denied, 276 Md. 748 (1975)).

Whether a condition precedent exists in a contract "can be determined by the terms of the contract." Id. at 448. This depends on "the intent of the parties to be gathered from the words they have employed." Id. (quoting Aronson & Co. v. Fetridge, 957 A.2d 125, 144 (Md.Ct.Spec.App. 2008)). No specific word or phrase is required to create an express condition precedent, but words and phrases such as "if" or "as soon as" are typically used to indicate a performance that has been made conditional. Id. (quoting Aronson, 957 A.2d at 144).

In support of their argument, Defendants point to language in § 4.1 of the Sublicense which, in relevant part, states that Howmedica shall pay DT the annual Update Royalty "so long as" Howmedica "shall receive during that calendar year an Update of the Database from James Nunley, II, MD or by a qualified colleague of Dr. Nunley's in the Duke Department of Orthopaedic Surgery." Defendants interpret this language to mean that are only obligated to pay Update Royalties if they accept the Updates. The Court reads this language differently.

Here, the Sublicense does not condition Howmedica's obligation to make the Quarterly Payments upon its actual receipt of the Updates. Rather, the Court reads § 4.1 to mean that if DT ensures that it will send Howmedica an Update during that calendar

15

year, that condition precedent is satisfied. Indeed, in clarifying the annual five percent increase in the Quarterly Payments beginning in 2017, the Sublicense provides: "in the event that [Howmedica] shall receive in calendar year 2017 the written commitment or agreement by James Nunley, II, MD . . . to Update the Database and an Update is <u>provided to</u> [Howmedica] . . . in calendar year 2017, the Update Royalty would increase to U.S. $37,800.00, and each of the Quarterly Payments would increase to $9,450.00." (<u>Id.</u>) (emphasis added). The use of "provided to" when explaining the annual increase in Quarterly Payments shows that "shall receive" has this meaning, as opposed to the meaning advanced by Defendants. <u>See</u> <u>Clancy</u>, 954 A.2d at 1101. Howmedica's rejection of the July 2017 Update, therefore, is of no consequence to whether DT satisfied the second condition precedent.

Thus, the Court concludes that Howmedica's duty to make Quarterly Payments in a calendar year is not dependent on Howmedica's actual receipt of an Update.[9]

### ii. April 2017 Quarterly Payment

DT contends that it satisfied both conditions precedent for 2017, and therefore Howmedica must remit the Quarterly Payments for 2017. As a result, DT asserts, Howmedica breached the Sublicense when it failed to make the April 2017 Quarterly Payment. The Court agrees.

---

[9] DT argues that because Howmedica anticipatorily repudiated the Sublicense, it was relieved of its obligation to perform the conditions precedent prior to Howmedica remitting the Quarterly Payments. Because the Court concludes that DT satisfied the conditions precedent for 2017 and that Howmedica breached the Sublicense, the Court does not address this argument.

16

Here, DT has put forth evidence demonstrating that it satisfied both conditions precedent for 2017, which triggered Howmedica's obligation to make Quarterly Payments during that calendar year. On January 6, 2017, Dr. Nunley sent Defendants a letter that served as the "written commitment" to update the Database in 2017. (Nunley Letter at 1; Nunley Decl. ¶¶ 24–25). Then, on July 5, 2017, DT sent Defendants the 2017 Second Quarter Database Update. (2017 Update; Nunley Decl. ¶ 26). These events obligated Howmedica to make Quarterly Payments under the Sublicense. Although Howmedica made the first Quarterly Payment in January 2017, it failed to remit the April 2017 Quarterly Payment—and Defendants do not dispute this fact. (Reicher Decl. ¶¶ 25, 34, 34 n.1). Thus, the Court concludes that Howmedica materially breached the Sublicense when it failed to remit the April 2017 Quarterly Payment.

In sum, Howmedica materially breached the Sublicense when it terminated the Agreement in December 2016 and when it failed to remit the April 2017 Quarterly Payment.[10] Accordingly, DT is entitled to summary judgment as to Howmedica's liability under Count I.

### 2. Indemnification

Defendants maintain that because DT's indemnification claim is not ripe, they are entitled to summary judgment in their favor as to Count II. The Court disagrees.

---

[10] Because the Court concludes that Howmedica breached the Sublicense, the Court does not address DT's claim that Howmedica breached the implied covenant of good faith and fair dealing.

Here, § 5.2.2 of the Sublicense provides, in relevant part, that Howmedica "shall indemnify, defend[,] and hold harmless [DT] . . . in a first party breach of contract action" arising out of a breach of the Sublicense. (Sublicense § 5.2.2). Section 5.2.4 of the Sublicense further provides that the indemnification provision "shall apply to any first party or direct Claim between or among the Parties to this Agreement." (Id. § 5.2.4). Thus, by the terms of the Sublicense, Howmedica agreed to indemnify DT for a breach of contract action, such as the instant action.

Defendants correctly point out that "[t]he right[ ] . . . to indemnification . . . whether based on contract or tort, accrue[s] at the time of payment [by the indemnitee] and not before." Leite v. Severstal Sparrows Point, LLC, No. WDQ-09-0742, 2010 WL 457513, at *2 (D.Md. Feb. 3, 2010) (alteration in original) (quoting Cotham v. Bd. of Cty. Comm'rs, 273 A.2d 115, 121 (Md. 1971)). But this does not require the party to actually remit a payment. Rather, it merely requires that the Court find a party liable. Id. Because the Court concludes that Howmedica is liable under Count I, the Court further concludes that Howmedica is now liable under Count II for indemnification of DT's breach of contract claim.

In sum, DT is entitled to summary judgment in its favor as to Howmedica's liability under Counts I and II of the Complaint. DT is not, however, entitled to summary judgment in its favor as to Stryker's liability under Counts I and II. Accordingly, the Court will grant in part and deny in part DT's Motion and Defendants' Cross-Motion.

## III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part DT's Motion for Partial Summary Judgment on Liability (ECF No. 4) and Defendants' Cross-Motion for Summary Judgment (ECF No. 18). The Court will deny DT's Motion to the extent that it seeks to impose liability on Stryker under the Sublicense and grant Defendants' Cross-Motion on the grounds that Stryker is not a party to the Sublicense. The Court will grant DT's Motion to the extent that it seeks summary judgment against Howmedica on Counts I and II of the Complaint and deny Defendants' Cross-Motion as to Counts I and II of the Complaint. In addition, the Court will deny as moot Defendants' Motion to Dismiss (ECF No. 17) and Motion to Defer Consideration of Cross-Motions for Summary Judgment (ECF No. 19). The Court will also deny DT's Motion for Leave to File Surreply (ECF No. 36). A separate order follows.

Entered this 13th day of July, 2018

/s/
George L. Russell, III
United States District Judge