IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DT CONSULTANTS, LLC,                        :

      Plaintiff,                           :

v.                                          :          Civil Action No. GLR-17-1697

HOWMEDICA  OSTEONICS  CORP.,                :
et al.,
                                            :
      Defendants.

## **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant Howmedica Osteonics Corp.'s ("Howmedica") Motion for Summary Judgment (ECF No. 131) and Plaintiff DT Consultants, LLC's ("DT") Cross-Motion for Summary Judgment (ECF No. 141).[1] The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md.

---

[1] The full caption of DT's Cross-Motion for Summary Judgment is "Motion to Strike and Exclude Paragraphs 31 through 42 and 44 through 54 of the Expert Report and Paragraphs 11 through 17 and 21 through 24 of the Supplemental Expert Report of Timothy H. Hart; Cross-Motion for Summary Judgment; and Response in Opposition to Defendant's Motion for Summary Judgment." (ECF No. 141). In its Motion to Strike, DT seeks the exclusion of certain findings by Howmedica's expert Timothy H. Hart that rebut arguments asserted by R. Christopher Rosenthal, one of DT's experts. Because the Court does not rely on these paragraphs in finding that DT is not entitled to summary judgment, the Court will deny DT's Motion as moot.

Also pending are Howmedica's Motion to Exclude Testimony and Reports of Plaintiff DT Consultants, LLC's Experts R. Christopher Rosenthal, Dr. Samuel Adams & Dr. James Nunley (ECF No. 148) and Motion to Strike Untimely Sham Affidavit of DT's CEO David Reicher (ECF No. 156). Once again, because the Court does not rely on these expert reports or the affidavit in declining to enter judgment in favor of Howmedica, the Court will deny these Motions as moot.

2018). For the reasons outlined below, the Court will deny both Motions and request additional briefing from the parties.

## I.     BACKGROUND[2]

DT is a consulting and information services company that licenses and sublicenses orthopedic databases and other medical intellectual properties to medical device companies and healthcare providers. (Compl. ¶ 2, ECF No. 1). In September 2011, DT entered into a Database License Agreement with Duke University, which permitted DT to sublicense an orthopedic database developed by Duke and Dr. James Nunley, II, the Chief of Duke's Department of Orthopaedic Surgery (the "Database"). (Id. ¶¶ 7, 11; Def.'s Mot. Summ. J. ["Def.'s Mot."] Ex. 12 ["Sublicense"] at App. A, ECF No. 131-11). The Database contains data from 471 patients who received total ankle replacement surgery. (Def.'s Mot. Ex. 9 ["Nunley Dep."] at 23:2–21, ECF No. 131-9).

In October 2012, DT entered into a Database Sublicense Agreement (the "Sublicense" or "Agreement") with Howmedica's predecessor-in-interest, Small Bone Innovations, Inc. ("SBI"). (Compl. ¶ 8). The Sublicense granted SBI permission to use the Database. (Id. ¶ 9). The Sublicense provides that its term "shall be in perpetuity." (Sublicense § 6.1). In exchange for the Sublicense, SBI agreed to pay DT a $300,000.00 upfront cash royalty. (Id. § 4.1). SBI also agreed to pay a $36,000.00 annual "Update

---

[2] Unless otherwise noted, the facts outlined here are set forth in DT's Complaint (ECF No. 1). To the extent the Court discusses facts that DT does not allege in its Complaint, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

Royalty" "so long as" SBI: (1) "shall receive in any calendar year during the term of th[e] [Sublicense] the written commitment or agreement" from Dr. Nunley or a "qualified colleague . . . to Update[3] the Database during that calendar year"; and (2) "shall receive during that calendar year an Update of the Database" from Dr. Nunley or a "qualified colleague." (Id.). The Sublicense required SBI to pay the $36,000.00 Update Royalty in four quarterly $9,000.00 installments (the "Quarterly Payments") due on the first day of April, July, October, and January. (Id.). SBI and DT agreed that the Quarterly Payment amount would increase by five percent compounded annually beginning in 2017. (Id.).

In August 2014, Howmedica entered into a Bill of Sale and Assignment and Assumption Agreement (the "Assignment Agreement") with SBI, under which Howmedica assumed SBI's rights and obligations under the Sublicense. (See Defs.' Cross-Mot. & Opp'n Pl.'s Mot. Part. Summ. J. Ex. 1 ["Assignment Agreement"] ¶ 5, ECF No. 18-3). Howmedica then made Quarterly Payments on July 22, August 18, and November 16, 2015; February 23, July 11, and October 17, 2016; and January 19, 2017. (Pl.'s Reply Supp. Mot. Part. Summ. J. Ex. B at 2–9 ["Sept. 19, 2017 Reicher Decl."] ¶ 25, ECF No. 28-2).

---

3 "Update" is capitalized and defined in the Sublicense. The Court uses the term as defined in the Sublicense, which provides that an "Update" is an "extension . . . of the histories of earlier selected patients" or "a new statistical extraction . . . from the most recent provider database that shall comprise all or part of the Database." (Sublicense § 1.3).

On December 28, 2016, DT received a termination notice from Howmedica.[4] (Pl.'s Mot. Part. Summ. J. Ex. 2 ["Termination Letter"] at 2, ECF No. 4-2). In the letter, titled "Termination of Duke Database Sublicense Agreement," Howmedica stated that it "hereby provides notice that it is terminating the Agreement" as of the date of the letter. (Id.). On January 6, 2017, DT sent Howmedica a response indicating that its attempt to terminate the Sublicense was "wrongful," "in breach of the Agreement," and "of no force or effect." (Pl.'s Mot. Part. Summ. J. Ex. 3 ["Jan. 6, 2017 Letter"] at 2, ECF No. 4-3). DT also demanded that Howmedica "comply with the terms and conditions of the Agreement for its stated term and promptly retract its stated 'Termination' of the Agreement." (Id.). On February 8, 2017, Howmedica responded, asserting that under Maryland law "contract[s] with a perpetual term do[] not exist forever; rather, such a contract is interpreted as contemplating performance for a reasonable time" and is "terminable at will by either party." (Pl.'s Mot. Part. Summ. J. Ex. 4 ["Feb. 8, 2017 Letter"] at 1, ECF No. 4-4).

Also on January 6, 2017, Dr. Nunley sent Howmedica a letter to "serve as the written commitment" to update the Database in 2017. (Def.'s Mot. Ex. 31 ["Nunley Letter"] at 1, ECF No. 131-15; see also Nunley Dep. at 114:18–116:8). Howmedica did not remit the Quarterly Payment due on April 1, 2017. (Sept. 19, 2017 Reicher Decl. ¶ 34). Nevertheless,

---

[4] The Court notes that the letter is on Defendant Stryker Orthopaedics letterhead. Stryker Orthopaedics is Howmedica's doing-business-as name. Upon finding that Stryker Orthopaedics was not a party to the Sublicense and therefore could not be held liable for any breach of the Sublicense, the Court entered judgment in favor of Stryker on July 13, 2018. (July 13, 2018 Mem. Op. at 11, ECF No. 38). As such, the Court uses Howmedica's name to avoid confusion.

on July 5, 2017, DT sent Howmedica the 2017 Second Quarter Database Update. (Pl.'s Reply Supp. Mot. Part. Summ. J. Ex. B at 78 ["2017 Update"]). Howmedica attempted to reject DT's delivery of the Update on July 12, 2017. (Albu Decl. Ex. A at 5, ECF No. 35-1). On June 20, 2017, Howmedica provided DT with written correspondence reiterating that it "terminated the Sublicense on December 28, 2016" and that it "no longer desires to receive any annual written commitment or agreement to update the database under the Sublicense." (Defs.' Cross-Mot. & Opp'n Pl.'s Mot. Part. Summ. J. Ex. 1 at 72–73 ["June 20, 2017 Letter"], ECF No. 18-3).

DT brought suit against Howmedica on June 21, 2017 for breach of contract (Count I) and contractual indemnification (Count II). (Compl. ¶¶ 26–36). DT and Howmedica later filed cross-motions for partial summary judgment on the issue of Howmedica's liability for breach of contract. (See ECF Nos. 4, 18, 28, 35). On July 13, 2018, the Court entered summary judgment in favor of DT for Counts I and II, concluding that "Howmedica materially breached the Sublicense when it terminated the Agreement in December 2016 and when it failed to remit the April 2017 Quarterly Payment." (July 13, 2018 Mem. Op. at 17, ECF No. 38; see also July 13, 2018 Order at 1–2, ECF No. 39).

After a period of additional discovery, Howmedica filed its present Motion for Summary Judgment on September 10, 2019. (ECF No. 131). On October 25, 2019, DT filed an Opposition and Cross-Motion for Summary Judgment. (ECF No. 141). On January 7, 2020, Howmedica filed a combined Reply in support of its Motion for Summary

Judgment and Opposition to DT's Cross-Motion. (ECF No. 144). DT filed a Reply in support of its Cross-Motion on April 13, 2020. (ECF No. 154).

## II.   DISCUSSION

### A.   Standard of Review

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation

or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

When the parties have filed cross-motions for summary judgment, the court must "review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (quoting Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). Moreover, "[w]hen considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most

favorable' to the party opposing that motion." <u>Id.</u> (quoting <u>Wightman v. Springfield Terminal Ry. Co.</u>, 100 F.3d 228, 230 (1st Cir. 1996)). This Court, however, must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. <u>Drewitt v. Pratt</u>, 999 F.2d 774, 778–79 (4th Cir. 1993). If the evidence presented by the nonmovant is merely colorable, or is not significantly probative, summary judgment must be granted. <u>Anderson</u>, 477 U.S. at 249–50.

**B.   <u>Analysis</u>**

Because the Court has already entered judgment in favor of DT on the question of Howmedica's liability, (<u>see</u> July 13, 2018 Mem. Op. at 18), the only issue remaining for the Court is the amount of damages, if any, that Howmedica owes for its breach of the Sublicense.

Under Maryland law,[5] the non-breaching party in a contract action may recover damages for (1) "the losses proximately caused by the breach," (2) "that were reasonably foreseeable," and (3) "that have been proven with reasonable certainty." <u>Hoang v. Hewitt Ave. Assocs., LLC</u>, 936 A.2d 915, 934 (Md.Ct.Spec.App. 2007) (citing <u>Impala Platinum, Ltd. v. Impala Sales, Inc.</u>, 389 A.2d 887, 907 (Md. 1978)). In this context, reasonable certainty "means the likelihood of the damages being incurred as a consequence of the breach, and their probable amount." <u>Id.</u> at 935. "Losses that are speculative, hypothetical, remote, or contingent either in eventuality or amount will not qualify as 'reasonably certain'" and therefore are not recoverable as contract damages. <u>Id.</u> (citing <u>Stuart</u>

---

[5] The parties agree that Maryland law governs this case.

8

Kitchens, Inc. v. Stevens, 234 A.2d 749, 751–52 (Md. 1967); Kleban v. Eghrari-Sabet, 920 A.2d 606, 628 (Md.Ct.Spec.App. 2007)). "On a claim for breach of contract, the plaintiff . . . asserting the claim for damages bears the burden of proving all elements of the cause of action, including plaintiff's own performance of all material contractual obligations." Collins/Snoops Assocs., Inc. v. CJF, LLC, 988 A.2d 49, 57 (Md.Ct.Spec.App. 2010) (citing Johnson & Higgins v. Simpson, 163 A. 832, 834 (Md. 1933)).

DT seeks damages for lost profits resulting from Howmedica's breach. (See Mem. Supp. Pl.'s Cross-Mot. & Opp'n at 24, ECF No. 141-2). "When lost profits are claimed for lost income from business operations that would have been made but for the breach, the claim is for 'consequential' or 'special' damages." CR-RSC Tower I, LLC v. RSC Tower I, LLC, 56 A.3d 170, 182 (Md. 2012) (citation omitted). In such cases, the non-breaching party may recover losses that "may reasonably be supposed to have been in the contemplation of both parties at the time of making of the contract." Id. (quoting Burson v. Simard, 35 A.3d 1154, 1159 (Md. 2012)). Put differently, lost profits are not recoverable unless they are "reasonably supposed to have been within the contemplation of the parties, when the contract was made, as the probable result of a breach." Meineke Car Care Ctrs., Inc. v. RLB Holdings, LLC, 423 F.App'x 274, 287 (4th Cir. 2011).

Howmedica contends it is entitled to summary judgment because the Sublicense lasts "in perpetuity" and perpetual damages cannot be proven with reasonable certainty; DT has not adequately proven its costs or losses resulting from Howmedica's breach; or,

alternatively, Howmedica owes no damages because it already paid DT everything that was due under the terms of the Sublicense. For its part, DT contends that the clear and unambiguous terms of the Sublicense compel a damages award of $8,674,811.00 in unpaid Update Royalties. The Court will begin by addressing DT's Cross-Motion for Summary Judgment.

### 1.    DT's Cross-Motion

DT asserts it is entitled to $8,674,811.00 in unpaid Update Royalties and interest because Updates to the Database would have continued for forty-seven years if Howmedica had not breached the Sublicense. In support of this position, DT points to testimony that Dr. Samuel Adams, an orthopedic surgeon at Duke, would maintain the Database after Dr. Nunley's retirement, and that Duke would "unquestionably" provide Updates to the Database as long as the patients are alive. (Pl.'s Cross-Mot. & Opp'n Ex. H ["Nunley Rep."] ¶¶ 41–48, ECF No. 141-10; id. Ex. J ["Adams Rep."] ¶¶ 15–20, ECF No. 141-12). DT also cites the finding by its damages expert, J. Christopher Rosenthal, that the average life expectancy of the four youngest participants in the Database is forty-seven years. (Id. Ex. F ["Rosenthal Rebuttal Rep."] ¶¶ 29–30, ECF No. 141-8). At bottom, the Court finds that this evidence is insufficient to enter summary judgment in favor of DT.

First, the testimony of Drs. Nunley and Adams is too speculative to support an award of forty-seven years of future Update Royalties because the Sublicense did not guarantee Updates to the Database after 2016 and, in any event, the duty to provide

Updates terminated upon Howmedica's breach of the Sublicense. The Sublicense states that "Dr. Nunley covenants, promises and agrees . . . to provide Updates to the Database each calendar year beginning calendar year 2012 <u>to and including calendar year 2016</u>." (Sublicense § 4.2 (emphasis added)). Elsewhere, the Sublicense contemplates Updates after 2016—for instance, § 4.1 explains what the Update Royalties would be in 2017 and 2018 "in the event that" Howmedica received a written commitment from Dr. Nunley those years—but does not impose any duty to provide them. Certainly nothing in the Sublicense guarantees that Updates would continue past 2016, much less each year until the death of the last remaining Database participant. And regardless of the assurances from Drs. Nunley and Adams about future Updates, any duty to deliver Updates after 2016 was discharged upon Howmedica's material breach of the Sublicense.[6] <u>See</u> <u>Jay Dee/Mole Joint Venture v. Mayor & City Council of Balt.</u>, 725 F.Supp.2d 513, 526 (D.Md. 2010) (noting that a material breach "discharges the non-breaching party of its duty to perform"). Thus, the testimony from Drs. Nunley and Adams that they would have provided Updates for forty-seven years is merely hypothetical and cannot support an award of damages. <u>See</u> <u>Big Lots Stores, Inc. v. Giant of Md., LLC</u>, No. CV DKC 2006-3249, 2008 WL 11367511, at *3 (D.Md. July 14, 2008) (finding that testimony indicating plaintiff "would have renewed

---

[6] This Court held that Howmedica materially breached the Sublicense when it failed to remit the April 2017 Quarterly Payment. (July 13, 2018 Mem. Op. at 17; <u>see also</u> Sublicense § 6.1.1 ("[A] material breach of this Agreement by [Howmedica] by not paying when due and payable . . . any Update Royalty (or Quarterly Payment) shall not be deemed to be curable by [Howmedica].")).

the sublease three, ten, and twenty years in the future" if defendant had not terminated the sublease was "mere conjecture" and too speculative to support an award of lost profit damages).

Second, DT cannot prove its damages with reasonable certainty because the condition precedent giving rise to Howmedica's duty to pay Update Royalties has not been satisfied. "Generally, when a condition precedent is unsatisfied, the corresponding contractual duty of the party whose performance was conditioned on it does not arise." Chesapeake Bank of Md. v. Monro Muffler/Brake, Inc., 891 A.2d 384, 391–92 (Md.Ct.Spec.App. 2006) (internal quotation marks and citation omitted); see also Laurel Race Course, Inc. v. Regal Constr. Co., 333 A.2d 319, 327 (Md. 1975) ("It is fundamental that where a contractual duty is subject to a condition precedent, whether express or implied, there is no duty of performance and there can be no breach by nonperformance until the condition precedent is either performed or excused.").

Under the terms of the Sublicense, Howmedica's payment of Update Royalties is contingent on two events: (1) a written commitment stating that Dr. Nunley or his colleague would provide an Update in that calendar year; and (2) DT's actual delivery of the Update. (See Sublicense § 4.1). In other words, these events are conditions precedent to Howmedica's duty to pay the full Update Royalty for a given year. (See July 13, 2018 Mem. Op. at 15–16). On January 6, 2017, Dr. Nunley sent Howmedica a commitment to provide an Update for calendar year 2017, and on July 5, 2017, DT sent Howmedica the Update. However, Duke has not provided any Updates to Howmedica since 2017, nor has

Howmedica received a notice from Dr. Nunley or his colleagues promising any Updates after 2017, much less for forty-seven years of future Updates.[7] (See, e.g., Def.'s Mot. Ex. 8 ["Reicher Dep."] at 118:12–17, ECF No. 131-8; Nunley Dep. at 116:6–8; Def.'s Mot. Ex. 5 ¶ 27, ECF No. 131-5 (admitting "that Duke has not provided DT with any Updates to the SBI database, as defined in the License, since 2017")). Because DT's requested damages are contingent on conditions precedent that have not been satisfied for any year beyond 2017, DT's requested damages are not reasonably certain and therefore not recoverable as contract damages. See Hoang, 936 A.2d at 934.

Finally, the Court finds that the evidence DT presents here is not the type of competent evidence required to prove damages with reasonable certainty in light of Management Systems Associates, Inc. v. McDonnell Douglas Corp., 762 F.2d 1161 (4th Cir. 1985).[8] There, the United States Court of Appeals for the Fourth Circuit considered

---

[7] On this point, it is worth noting that the language of the Sublicense dictates that, at present, Howmedica could only be liable for Updates through 2020 at the very latest. The Sublicense states that Howmedica must pay Update Royalties when it "receive[s] in any calendar year . . . the written commitment or agreement by [Dr. Nunley or a qualified colleague] to Update the Database during that calendar year" and "receive[s] during that calendar year an Update of the Database." (Sublicense § 4.1 (emphasis added)). In other words, Howmedica must receive the commitment from Dr. Nunley during the year in which the Update will be provided. Thus, as this Court reads it, Dr. Nunley could not provide a written commitment to Howmedica in 2020 stating that he would provide Updates in year 2021 and onward. For this reason, the argument that Howmedica owes forty-seven years of future Update Royalties is simply untenable.

[8] Although Management Systems involved a contract governed by North Carolina law, the Court notes that North Carolina, like Maryland, requires damages to be proven with "reasonable certainty" and not based on "hypothetical or speculative forecasts of losses." Iron Steamer, Ltd. v. Trinity Rest., Inc., 431 S.E.2d 767, 770 (N.C.Ct.App. 1993).

how long a licensee was required to pay royalties under a software licensing agreement that one party argued was "perpetual" and continued "for eternity." <u>Id.</u> at 1169. Reasoning that "it would be impossible to make . . . a calculation based on payments 'for eternity,'" the court looked to the construction of the agreement and past dealings between the parties to determine a "reasonable" lease term. <u>Id.</u> at 1169–71.

DT has not presented any evidence of dealings between the parties suggesting that, at the time they entered into the Sublicense, they intended for Updates to continue for the lifetime of the Database participants. Although DT CEO David Reicher recalled that Anthony Viscogliosi, then the executive chairman of SBI, "wanted to follow these patients indefinitely for their life," Reicher admits there are no contemporaneous documents supporting that position. (Pl.'s Resp. Opp'n Def.'s Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. Summ. J. ["Pl.'s Reply"] Ex. G ["Reicher Dep."] at 83:17–84:1, ECF No. 154-8). To the contrary, Viscogliosi's notes from the time of negotiations indicate he wanted Dr. Nunley to update the Database through 2016 because that would guarantee him a "seven- to ten-year period [of data] for a large number of patients." (<u>See</u> Def.'s Mot. Ex. 6 ["Viscogliosi Dep."] at 66:8–67:25, ECF No. 131-6). Likewise, Thomas Loring, who served as the head of SBI's Worldwide Ankle Business unit from 2010 to 2014, averred that SBI intended to use the Database to track the patients through 2016, the ten-year point from the earliest date of surgery, not to follow patients for the rest of their lives. (Def.'s Reply Supp. Mot. Summ. J. & Opp'n Pl.'s Cross-Mot. ["Def.'s Reply"] Ex. 62 ["Loring Decl."] ¶¶ 6, 8, 12–13, ECF No. 144-4; <u>see</u> Def.'s Reply Ex. 63 ["Loring Dep."] at 64:8–

64:14, ECF No. 144-5). At bottom, there is insufficient evidence in the record to find that the parties contemplated forty-seven years of Updates at the time they entered into the Sublicense. Without such evidence, DT's requested damages are hypothetical and cannot be proven with reasonable certainty.

Relatedly, the assumptions underlying Rosenthal's calculation of the damages period lack any connection to the text of the Sublicense or the dealings between the parties; instead, Rosenthal's determination of the damages period is based only on the testimony of Drs. Nunley and Adams. In addition, Rosenthal does not offer any scientific or statistical explanation for selecting the average life expectancy of the four youngest participants—as opposed to the life expectancy of the ten youngest participants, or median life expectancy, or average life expectancy of all the participants—to determine the length of the damages period. Rather, Rosenthal testified that he narrowed in on the youngest patients for his calculation because, quite obviously, "[t]hey had the longest expected life." (Pl.'s Reply Ex. B ["Rosenthal Dep."] at 90:5, ECF No. 154-3). By his own admission, Rosenthal selected these individuals based on the instruction by DT's counsel—not because of any independent analysis or reasoning. (See Def.'s Mot. Ex. 10 ["Rosenthal Dep."] at 87:2–19, ECF No. 131-10; id. Ex. 32 ["Rosenthal Expert Rep."] ¶ 28, ECF No. 131-16).[9] In all, expert testimony that select participants in the database would live for

_____

[9] Thought not fatal to Rosenthal's expert determination, it is worth noting that Howmedica's expert opined that, if the damages period had to be based on patient lifespan, a more appropriate damages period would "be measured by the average life expectancy of

another forty-seven years—without any evidence that the parties contemplated this timeframe at the time they entered into the Sublicense—falls short of the type of evidence required for DT to prove its damages with reasonable certainty.

In sum, DT's request for forty-seven years of unpaid Update Royalties is inconsistent with the Court's reading of the Sublicense and is not supported by any contemporaneous evidence of an understanding between the parties. The evidence that DT does offer is speculative, hypothetical, and untethered from the terms of the Sublicense itself. As such, DT cannot meet its burden of proving $8,674,811.00 in lost profits with reasonable certainty, and DT's Cross-Motion will be denied.

### 2. Howmedica's Motion

Howmedica first argues that it is entitled to summary judgment because the Sublicense lasts "in perpetuity" and perpetual damages cannot be proven with reasonable certainty. While this may be true, DT does not seek "perpetual" damages here; rather, DT requests damages for a term of forty-seven years—a term that is untenable for the reasons stated above. As such, this argument is insufficient to enter judgment in Howmedica's favor.

Next, Howmedica argues that it is entitled to judgment as a matter of law because DT failed to introduce evidence of the costs and losses it avoided as a result of Howmedica's breach. Specifically, Howmedica asserts that DT blocked discovery relating

---

participants 61 and over," who make up 87.7% of the database. (Pl.'s Cross-Mot. & Opp'n Ex. M ["Hart Expert Rep."] ¶¶ 46–48, ECF No. 141-15).

to DT's royalty payments to Duke, which Howmedica contends are required to calculate the offset to damages with reasonable certainty. The Court is not persuaded. As DT points out, Judge Copperthite previously ruled, and this Court affirmed, that DT's royalty payments to Duke are not relevant to the calculation of damages because they "do[] not serve as any reduction of damages owed by [Howmedica]." (Dec. 18, 2018 Order at 2, ECF No. 85; see Apr. 18, 2019 Order at 3, ECF No. 116). As such, the Court declines to enter judgment for Howmedica on this ground.

Finally, Howmedica contends that the plain language of the Sublicense compels a finding of no damages, warranting summary judgment in its favor. This argument also fails. Although DT has not satisfied the burden of proving its lost profit damages with reasonable certainty, the Court cannot hold as a matter of law that Howmedica owes no damages for its breach of the Sublicense. Instead, the Court finds that DT is entitled to damages equal to the unpaid Update Royalties for 2017.

As discussed above, Dr. Nunley sent Howmedica a commitment to provide an Update for calendar year 2017 on January 6, 2017. Howmedica failed to remit the Quarterly Payment due on April 1, 2017, which constituted a material and incurable breach of the Sublicense. (See July 13, 2018 Mem. Op. at 16–17; see also Sublicense §§ 4.3, 6.1.1).[10] DT later delivered the Update to Howmedica on July 5, 2017. Pursuant to the

---

[10] The Court previously found that Howmedica also breached the Sublicense when it sent DT a termination notice in December 2016. (July 13, 2018 Mem. Op. at 14). Under the terms of the Sublicense, however, this breach was curable and therefore did not prevent DT from committing to provide an Update to Howmedica in 2017. (See Sublicense §

unambiguous language of the Sublicense, these events triggered Howmedica's duty to pay $37,800.00 in Update Royalties in the form of four Quarterly Payments due on the first day of April, July, and October 2017, and January 2018. Howmedica did not make any of these Quarterly Payments. As such, the Court finds that DT is entitled to damages equal to the unpaid Update Royalties for 2017, plus interest and other fees as provided by the terms of the Sublicense. Accordingly, Howmedica's Motion for Summary Judgment will be denied. Additionally, the Court will direct DT to submit a Motion for Award of Damages consistent with the foregoing analysis within ten (10) days of the date of this Opinion, and permit Howmedica to submit an Opposition to DT's calculation of damages within seven (7) days thereafter.[11]

### III.   CONCLUSION

For the foregoing reasons, the Court will deny Howmedica's Motion for Summary Judgment (ECF No. 131); deny DT's Cross-Motion for Summary Judgment (ECF No. 141); and deny as moot DT's Motion to Strike and Exclude Paragraphs 31 through 42 and 44 through 54 of the Expert Report and Paragraphs 11 through 17 and 21 through 24 of the Supplemental Expert Report of Timothy H. Hart (ECF No. 141); Howmedica's Motion to Exclude Testimony and Reports of Plaintiff DT Consultants, LLC's Experts R. Christopher

---

6.1.1). As such, the Court finds that the operative material breach occurred when Howmedica failed to remit the first 2017 Quarterly Payment.

[11] Although the Court notes Howmedica's exception to the finding of liability and damages, its Opposition must be limited to DT's calculation of the specific amount awarded pursuant to this Opinion.

Rosenthal, Dr. Samuel Adams & Dr. James Nunley (ECF No. 148); and Howmedica's

Motion to Strike Untimely Sham Affidavit (ECF No. 156). A separate Order follows.

Entered this 14th day of September, 2020.

                                                     _____/s/_____
                                                     George L. Russell, III
                                                     United States District Judge