IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DT CONSULTANTS, LLC,          :

    Plaintiff,              :

v.                       :          Civil Action No. GLR-17-1697

HOWMEDICA OSTEONICS CORP.,   :

    Defendant.           :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiff DT Consultants, LLC's ("DT") Petition for Attorneys' Fees and Costs (ECF No. 162). The Petition is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant in part and deny in part the Petition.

## I.    BACKGROUND

This dispute involves the breach of a Sublicense Agreement between DT and Defendant Howmedica Osteonics Corp. ("Howmedica").[1] On September 14, 2020, the Court issued a Memorandum Opinion denying the parties' cross-motions for summary judgment, explaining that DT was entitled to damages "equal to the unpaid Update Royalties for 2017, plus interest and other fees as provided by the terms of the Sublicense."

---

[1] The Court sets forth a detailed explanation of the facts in its September 14, 2020 Memorandum Opinion. (See ECF No. 160). Defined terms in the present Opinion have the same meaning as those used in the September 14, 2020 Opinion.

(Mem. Op. at 18, ECF No. 160). Accordingly, the Court directed DT to move for an award of damages.

On September 23, 2020, DT filed a motion styled as a "Petition for Attorneys' Fees and Costs." (ECF No. 162). Howmedica filed its Opposition on September 30, 2020. (ECF No. 163). DT filed a Reply on October 8, 2020, followed by Howmedica's Surreply on October 14, 2020. (ECF Nos. 164, 167).

## II.    DISCUSSION

### A.    Damages

The Court first considers the amount of damages owed for Howmedica's breach of the Sublicense Agreement. In its September 14, 2020 Memorandum Opinion, the Court explained that, pursuant to the express terms of the Sublicense, the unpaid Update Royalties for 2017 were equal to $37,800.00. (See Mem. Op. at 17–18). As such, the Court noted that total damages were "equal to the unpaid Update Royalties for 2017, plus interest and other fees as provided by the terms of the Sublicense." (Id. at 18). The Court thus directed DT to file "a Motion for Award of Damages consistent with the foregoing Memorandum Opinion." (Order at 2, ECF No. 161). Despite this directive, DT's Petition merely states that damages are equal to $37,800 and does not provide any specific request for interest. (See Pl.'s Pet. Att'ys' Fees & Costs ["Pet."] at 18, ECF No. 162). Accordingly, the Court will simply award DT $37,800.00 in damages.

### B.    Indemnification

The majority of DT's Petition is spent discussing its entitlement to attorneys' fees and other costs pursuant to the Sublicense Agreement, which provides that Howmedica

must indemnify DT for reasonable attorneys' fees and costs that DT "paid, suffered or incurred" as a result of litigating an action for breach of contract. (Sublicense Agreement § 5.2.1, ECF No. 4-1). Howmedica contends that DT has not adequately demonstrated that it has paid, suffered, or incurred any attorneys' fees or litigation costs in this matter and, in any event, DT's requested expenses should be reduced because they are unreasonable in light of the facts and circumstances at hand. Separately, Howmedica argues that DT's request for unspecified "Collection Costs" is premature. The Court addresses these arguments in turn.

### 1. Attorneys' Fees

DT admits it has not yet paid any attorneys' fees in this matter. Nonetheless, DT contends it has incurred $624,793.98 in attorneys' fees based upon the hourly rates of counsel and paralegals from the law firm Schulman, Hershfield & Gilden, P.A. ("SH&G"), which DT retained in connection with this dispute. Howmedica responds that DT has not incurred these fees because the engagement letter between DT and SH&G (the "Engagement Letter") is a contingency fee agreement, not an hourly fee agreement, and DT has yet to recover anything from Howmedica. At bottom, the Court agrees with Howmedica.

The Engagement Letter states that DT will "pay SH&G on a contingency fee basis." (Engagement Ltr. at 1, ECF No. 162-4). Specifically, the Engagement Letter provides that DT shall "remit[] to SH&G Forty Percent (40%) of the amount recovered from said lawsuit[,]" which "shall be paid directly to [SH&G] immediately upon recovery of any sum(s)." (Id.). In other words, DT's attorneys' fees become payable to SH&G upon DT's

"recovery" from Howmedica. As such, DT does not incur attorneys' fees until that time.[2]

As Howmedica points out, DT has not yet "recover[ed] [] any sum(s)" because

"Howmedica has not paid DT anything for this lawsuit, and judgment has not been entered

(much less become final and satisfied)." (Def.'s Opp'n Pet. Att'ys' Fees & Costs ["Opp'n"]

at 6, ECF No. 163). Because DT has not yet recovered anything from this lawsuit, DT has

yet to incur any fees under the Engagement Letter. Thus, DT is not presently entitled to

indemnification under the Sublicense Agreement.

Despite the clear language in the Engagement Letter, DT argues that attorney Leslie

D. Hershfield is nonetheless entitled to his hourly rate, explaining that "if this matter

settled . . . counsel would have received a contingent amount of the settlement" but "since

a judgment was rendered by this Court, the fee is hourly." (Pet. at 16). The Court is not

persuaded. The Engagement Letter states that fees will be calculated using Hershfield's

hourly rate of $550.00 only "[i]f the United States District Court or any other Federal Court

finds that the contingency fee of 40% is inapplicable." (Engagement Ltr. at 1). The Court

sees no reason why the contingency fee would be inapplicable here. Indeed, the Court

agrees with Howmedica's observation that this language "likely refers to a situation in

which the total damages recovered [were] large and, under [Local] Rule 1.5, the Court

found the 40% contingency fee unreasonable and therefore inapplicable." (Opp'n at 6 n.3).

Because there is no language in the Engagement Letter supporting DT's assertion that

---

[2] In general, "incur" means to bring on oneself a liability or expense. See Weichert Co. of Md. v. Faust, 19 A.3d 393, 406 (Md. 2011) (citing Black's Law Dictionary 782 (8th ed. 2004)).

SH&G must be paid by the hour, DT's request for hourly attorneys' fees cannot be sustained.

DT also argues that it is entitled to its requested fees because "attorney's fees are incurred 'when services are rendered.'" (Pl.'s Reply Supp. Pet. Att'ys' Fees & Costs ["Reply"] at 5, ECF No. 164-1 (quoting Worsham v. Greenfield, 78 A.3d 358, 360 (Md. 2013)). In support of this argument, DT cites to Weichert Co. of Maryland v. Faust, 19 A.3d 393 (Md. 2011), which observed that the "the term 'incur' only refers to an expense incurred on behalf of a party, but not necessarily paid by the party." Id. at 408. As Howmedica points out, however, Weichert involved a fee-shifting provision that referred generally to "fees incurred" without "specify[ing] by whom they must be incurred." Id. at 398. The Weichert court held that in such instances, a court should interpret "incurred" to mean fees "incurred on [the party's] behalf, regardless of who actually paid the costs." Id. Unlike the fee-shifting provision in Weichert, the Sublicense Agreement here clearly specifies that DT must pay, suffer, or incur the expenses in order to be entitled to indemnification; thus, Weichert's reasoning does not apply. Moreover, even if Weichert were relevant to the present case, its reasoning would nonetheless require the fees to have been "paid" by another party on DT's behalf. See id. at 398. At bottom, Weichert does not advance DT's argument.

The other case DT cites, Worsham v. Greenfield, 78 A.3d 358 (Md. 2013), is equally unhelpful. Worsham does not involve a contractual indemnification provision, but rather discusses Maryland Rule 1-341, which provides for attorneys' fees for defending against a proceeding that was brought in "bad faith." See 78 A.3d at 361. There, the court found that

the defendant had "'incurred' the costs of her defense within the meaning of Rule 1-341" where her insurer had paid the costs of litigation on her behalf, explaining that Rule 1-341 was intended "to deter litigation that clearly lacks merit." <u>Id.</u> at 361, 368–69. Once again, <u>Worsham</u> does not support DT's assertion that it incurred legal fees at the time SH&G rendered its services. Thus, DT's request for hourly attorneys' fees must fail.

In sum, DT's attorneys' fees are contingent, not hourly, and DT has yet to "recover[] any sum(s)" from Howmedica in this litigation. Thus, DT has not incurred any fees under the Engagement Letter. As a result, DT is not currently entitled to indemnification under the Sublicense Agreement, and DT's request for $624,793.98 in hourly fees must be denied.

### 2. Litigation Costs

DT also seeks $211,304.07 in litigation costs and expenses. Howmedica contends that DT has not adequately demonstrated that it has either paid or incurred these costs. For the reasons explained below, the Court agrees.

The Engagement Letter states that "any and all out-of-pocket expenses incurred by this lawsuit, as well as any out-of-pocket fees, shall be the sole responsibility of DT Consultants, LLC to pay directly." (Engagement Ltr. at 1). In addition, DT "will be responsible for all costs and expenses incurred on its behalf, including but not limited to fees for experts and investigators, long distance telephone, travel, copying, facsimile messages, computerized legal research, messengers, process service, court/clerk fees, and transcripts." (<u>Id.</u> at 2). The Engagement Letter also provides that "[t]hese expenses will be paid from the aforementioned contingency fee, unless those expenses become greater than

the above-mentioned contingency fee[,]" in which case DT "shall be responsible for paying all additional expenses in excess of the contingency fee upon receipt of the invoice for same." (Id. at 2).

According to DT, it has already "paid all expenses associated with this litigation, including all expert fees, deposition fees, travel costs, copying costs, court costs, mediation fees and research costs" either "directly to individual vendors" or by "reimburs[ing] counsel." (Reply at 4). DT also provides list of these expenses. (See ECF No. 162-3). This list, however, merely provides the dollar value, date, and brief description of each expense—it does not differentiate between costs DT paid directly to vendors and those for which DT reimbursed its counsel. Moreover, as Howmedica points out, DT's accounting of these expenses is unsubstantiated and lacks reliability. For instance, Howmedica identifies sixteen duplicative entries that total $33,478.12 in overstated costs. (Opp'n at 32–34). Howmedica also flags DT's entries for $29,669.15 in "research" fees and $9,246.10 in "photocopies" that have no apparent connection to the case. (Id. at 34). Additionally, although DT attributes $140,773.86 of its requested costs to expert charges, DT does not provide any documentation to substantiate these expert fees. (Id. at 34–35).

In all cases, "[t]he fee applicant bears the burden of providing sufficiently details records to explain and support [the] request for costs." Hamner v. Anne Arundel Cnty., No. CCB-10-2485, 2014 WL 1943586, at *6 (D.Md. May 14, 2014). Where requested costs are not sufficiently documented, a court is well within its discretion to disallow such costs. See Trimper v. City of Norfolk, 58 F.3d 68, 77 (4th Cir. 1995) (eliminating costs that plaintiff failed to substantiate and rejecting unverified chart of expenses). Here, DT did not

substantiate its litigation expenses with an affidavit, invoices, or any other verification, nor did it substantively respond to the apparent errors or deficiencies that Howmedica identifies. Accordingly, DT's request for its litigation costs must be denied.

### 3. Reasonableness

Howmedica also argues in the alternative that DT's requested attorneys' fees and litigation costs should be denied or significantly reduced because they are unreasonable in light of the circumstances of this case. "[A]bsent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees." Rohn Prods. Int'l, LC v. Sofitel Cap. Corp. USA, Inc., No. WDQ-06-504, 2010 WL 3943747, at *4 n.13 (D.Md. Oct. 7, 2010). Under Maryland law, if a fee request arises from a contractual fee-shifting provision in a dispute between private parties over a breach of contract, "when a prevailing party prevails on less than all of the asserted claims for relief[,] [i]t enlarges (rather than reduces) the wide discretion courts enjoy in fashioning reasonable fee awards." Ochse v. Henry, 88 A.3d 773, 786 (Md.Ct.Spec.App. 2014). Likewise, "the limited value of the prevailing party's victory" is grounds to deny an award of costs. Cherry v. Champion Int'l Corp., 186 F.3d 442, 446 (4th Cir. 1999). "Above all, a court's duty in fashioning an award pursuant to a contract is to determine the reasonableness of a party's request." Ochse, 88 A.3d at 784. Importantly, "[t]he party requesting fees has the burden of providing the court with the necessary information to determine the reasonableness of its request." Myers v. Kayhoe, 892 A.2d 520, 532 (Md. 2006); see also Ochse, 88 A.3d at 789 ("[A] party against whom a fee award is sought has a right . . . to require the party seeking the award to establish, by a

preponderance of the evidence, that party's right to the amount sought." (quoting Diamond Point Plaza Ltd. P'Ship v. Wells Fargo Bank, N.A., 929 A.2d 932, 957 (Md. 2007))).

Here, Howmedica argues that DT's request for fees and costs should be denied because DT refused Howmedica's reasonable settlement offers and DT achieved minimal success in the lawsuit.[3] The Court addresses these arguments in turn.

### a. Settlement Offers

Howmedica first argues that DT's request for costs and fees should be denied because DT pursued extortionate settlement demands instead of accepting Howmedica's reasonable settlement offers. "A district court may, in its discretion, consider settlement offers in determining the reasonable amount of attorney's fees." Nelson v. Cowles Ford, Inc., 77 F.App'x 637, 644 (4th Cir. 2003) (per curiam). Moreover, under Maryland law, "a party should not be permitted to increase a fee award by prolonging the litigation as a result of making unreasonable settlement demands or rejecting reasonable settlement offers." Friolo v. Frankel, 91 A.3d 1156, 1169 (Md. 2014) (citations omitted).

On April 7, 2017, before DT initiated this lawsuit, Howmedica offered to pay DT $18,000 to resolve the dispute.[4] (Decl. of Dari Bargy ["Bargy Decl."] ¶3, ECF No. 163-3).

---

[3] Howmedica also argues that DT's requested attorneys' fees should be denied because they lack reliability. Specifically, Howmedica contends that DT has failed to demonstrate that its proposed hourly rates are reasonable under the Local Guidelines. As noted above, DT failed to establish that it had incurred hourly attorneys' fees under the terms of its Engagement Letter. As such, the Court declines to consider Howmedica's arguments regarding the reasonableness of SH&G's hourly rates.

[4] Notably, although the April 7, 2017 settlement offer was less than what DT was ultimately awarded, it was made before the July 2017, October 2017, and January 2018

DT countered with a demand for $180,000—more than ten times Howmedica's initial offer, and more than four times what the Court would ultimately award in damages. (Id. ¶ 4). By the time it filed its Complaint, DT valued its damages at approximately $2.5 million. (See Compl. at 10, ECF No. 1). Later, DT represented to the Court that its damages were as much as $21 million. (See Dec. 20, 2018 Hr'g Tr. at 13:23, ECF No. 87-6). On November 25, 2019, after filing its motion for summary judgment, Howmedica made a settlement offer of $250,000. (Bargy Decl. ¶ 11). DT did not even respond to this offer, and instead filed a cross-motion for summary judgment seeking "$8,674,811.00, exclusive of attorney fees, costs, and expenses." (Pl.'s Cross-Mot. Summ. J. at 35, ECF No. 141-2).

Ultimately, the Court found in its September 14, 2020 Opinion that DT's damages were equal to the unpaid Quarterly Payments that were due on the first day of April, July, and October 2017 and January 2018, for a total of $37,800, exclusive of interest and costs. (Mem. Op. at 18). Notably, not only could DT have recovered a substantial portion of this amount before the lawsuit was even filed, but DT could have recovered significantly more by accepting Howmedica's $250,000 settlement offer during the litigation. Thus, the Court agrees with Howmedica that DT should not be permitted to collect significant fees and costs that it accrued after rejecting multiple reasonable settlement offers from Howmedica. See Vocca v. Playboy Hotel of Chicago, Inc., 686 F.2d 605, 607–08 (7th Cir. 1982) (affirming district court decision to award no attorneys' fees because of plaintiff's "refusal

---

Quarterly Payments even became due. In other words, the April 2017 settlement offer of $18,000 was comparable to DT's ultimate award in this case.

to settle the case earlier for an amount only slightly less" than the final award); see also EEOC v. Nutri/Sys., Inc., 685 F.Supp. 568, 577 (E.D.Va. 1988) ("[A] party should not be permitted to increase a fee award by making unreasonable settlement demands that unnecessarily prolong the litigation."). Accordingly, an award of no costs and fees is appropriate here.

### b. Litigation Success

Howmedica next argues that DT's request for fees and costs should be denied because DT achieved minimal success in the litigation. In determining an award of reasonable attorneys' fees, "the degree of success obtained" is "the most critical factor." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).[5] In cases in which a plaintiff achieves limited success, "the [trial] court should award only that amount of fees that is reasonable in relation to the results obtained." Ochse, 88 A.3d at 787 (alteration in original) (quoting Hensley, 461 U.S. at 440). "[T]he trial court has wide discretion to reduce a fee award," including "by identify[ing] specific hours that should be eliminated, or . . . simply reduc[ing] the award to account for the limited success." Id. (quoting Hensley, 461 U.S. at 436–37). "To accurately gauge [a plaintiff's] success, [a] district court . . . should [compare] what she sought with what she was awarded." McAfee v. Boczar, 738 F.3d 81, 93 (4th Cir. 2013). In such cases, evaluating "the relative size of the award" in comparison to the fees sought "may result in a downward adjustment" of reasonable fees. Monmouth

---

[5] "Although Hensley was a statutory fee-shifting case, its reasoning is compatible with a contractual fee-shifting analysis." Ochse, 216 88 A.3d at 786.

Meadows Homeowners Ass'n, Inc. v. Hamilton, 7 A.3d 1, 8 (Md. 2010); see Farrar v. Hobby, 506 U.S. 103, 114–16 (1992) (affirming appellate court decision to reverse $280,000 fee award where plaintiff sought $17 million in compensatory damages but was only awarded $1 in nominal damages); McAfee, 738 F.3d at 92–95 (reducing fee award by two-thirds where plaintiff sought a "windfall" "payday" of $500,000 but ultimately received less than $3,000); Ledo Pizza Sys., Inc. v. Ledo Rest., Inc., No. DKC-06-3177, 2012 WL 1247103, at *6, 8 (D.Md. Apr. 12, 2012) (reducing fees from $251,493.50 to $25,000 because plaintiffs were "awarded only nominal damages as a result of their failure to prove measurable damages").

Comparing DT's requested damages to its ultimate award plainly demonstrates that DT had minimal success in this litigation. As noted above, the final entry of judgment in this case will award DT only $37,800 in damages. By contrast, DT initially sought $2.5 million, then claimed its damages were as high as $21 million, and ultimately settled on a request for roughly $8.6 million. By any measure, DT's damages here are a mere fraction of what it sought to recover from this litigation—indeed, the final damages award in this case is less than 1% of DT's most recent demand. DT fails to cite any case where a court has awarded attorneys' fees and costs that were 2,000% percent more than the final award. Thus, DT's claim for $624,793.98 in attorneys' fees and $211,204.07 in costs is "hugely disproportionate" and not "reasonable in relation to the results obtained." See Ochse, 88 A.3d at 784, 787. Accordingly, it is appropriate to deny DT's request.

### 3. Collection Costs

Finally, DT asks the Court to direct Howmedica to indemnify DT for its "Collection Costs" under § 5.2.4 of the Sublicense Agreement. (See Pet. at 19). Section 5.2.4 provides that Howmedica must indemnify DT for its "Collection Costs," which are defined as "any and all Claims arising out of or in connection with the enforcement and collection of any indemnity obligations and duties under Section 5.2 of this Agreement." As discussed in detail above, "Claims" include attorneys' fees and expenses that were "paid, suffered or incurred" by the non-breaching party. (Sublicense Agreement § 5.2.1). The Sublicense Agreement also provides that the Collection Costs shall "survive any final judgment rendered in favor of an indemnified party." (Id. § 5.2.4).

Despite its request, DT does not explain what costs it has paid or incurred in attempting to collect a judgment from Howmedica in this case or provide any accounting for these unspecified Collection Costs. Nor could it—because the Court had not entered a final judgment at the time DT filed its Petition, DT could not have paid or incurred any Collection Costs by that time. Thus, DT's present request for Collections Costs is premature and will be denied without prejudice.

In sum, the Court finds that DT has not incurred any attorneys' fees, DT's requested costs are unsubstantiated, and, in any event, DT's requested fees and costs are unreasonable in the context of the outcome of this litigation. Additionally, DT's request for Collection Costs is not ripe at this time. Accordingly, DT's request for attorneys' fees, litigation costs, and unspecified "Collection Costs" must be denied.

### III.     CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part DT's Petition

for Attorneys' Fees and Costs (ECF No. 162). A separate Order follows.

Entered this 7th day of July, 2021.

_____/s/_____

George L. Russell, III
United States District Judge
